THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH J. LANGSTON, Defendant-Appellant.

Fifth District    No. 79-482

Opinion filed April 30, 1981.

John H. Reid and John F. Erbes, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William W. Schwartz, State's Attorney, of Murphysboro (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Kenneth J. Langston, was convicted by a jury in the Circuit Court of Jackson County for the offenses of burglary and felony theft and sentenced to concurrent terms of imprisonment of 4½ years for burglary and three years for theft. Defendant raises the following issues on appeal: 1) whether the trial court erred in restricting defendant's cross-examination; 2) whether the jury was improperly instructed that it could infer defendant's guilt on the burglary charge based upon his possession of items taken in the burglary; and 3) whether the value of the property was proved beyond a reasonable doubt to be in excess of $150. We affirm.

At trial Linda Wallace testified that she left her apartment, located at 417 South Graham in Carbondale, at 11:15 p.m. on the night of June 3, 1979, locking the door behind her. When she returned between 2:15 and

2:30 a.m. on June 4, she noticed that a window to the apartment was open and its screen was on the ground. Seeing this, she summoned the police. Officer William Brandon testified that on June 4 at approximately 2:05 a.m. he was operating a traffic radar device at a position approximately three blocks from the Wallace apartment. At this time defendant approached him, asked directions to 417 South Graham and drove away. Twenty minutes later defendant again passed Officer Brandon's position. This time defendant did not have his automobile headlights on. He was stopped by Officer Brandon and appeared nervous, but he seemed relieved when informed by the officer that the stop was due to a traffic infraction. Defendant was finally permitted to leave. At 2:47 a.m. Officer Brandon received a call concerning the burglary and he investigated the premises alleged to have been burglarized. He interviewed Linda Wallace. The officer described defendant to Ms. Wallace and she stated that she was acquainted with him, referring to him as "Sonny." She explained that she worked with him and that he was a guest in her apartment the previous weekend. Officer Brandon searched for defendant and found him asleep in his automobile parked at the address appearing on his driver's license. The officer testified that defendant explained his presence at 417 South Graham by saying he was looking for a "dude" named Tony. Defendant denied any knowledge of Linda Wallace until confronted by her statement that she knew him and worked with him. Then he responded, "Oh, that Linda Wallace." Officer Brandon then obtained permission to search the trunk of defendant's automobile. He discovered stereo equipment, earphones, a television set, a clock radio, and a placemat. These items were identified by Linda Wallace as belonging to her. On the way to the police station defendant explained that he had purchased these items from a friend in the parking lot behind 417 South Graham.

In his first issue on appeal defendant contends that the trial court erred by restricting cross-examination of Detective Jon Kluge. During direct examination Kluge testified to statements made by defendant while in custody. Kluge testified that defendant claimed that he purchased the items found in his automobile trunk and that he knew they were stolen. During the examination of Kluge, defendant challenged the latter statement attributed to him. Defendant sought to show inconsistencies in Kluge's trial and suppression hearing testimony on this point. During cross-examination, Kluge was asked if it was true that defendant told him that defendant thought that the property was stolen. Kluge stated that such was not the case. Defendant then confronted Kluge with testimony at the pretrial suppression hearing in which Kluge testified that defendant informed him that defendant knew the items were stolen property but that defendant was only guessing about their origin. The State attempted

to rehabilitate Kluge by showing that prior to the suppression hearing, Kluge had not reread a report concerning defendant's knowledge of the origin of the items but that he had reread the report before testifying at trial. On re-cross-examination, defendant focused on this report and the fact that it had not surfaced prior to trial through normal discovery channels.

"Q. Do you have any explanation for us at this time as to why the report did not surface until August 3d?

MR. STRONG: Objection, Your Honor.

THE COURT: Sustained."

We agree with defendant that the objection was improperly sustained. (Cf. People v. Monroe (1977), 66 Ill. 2d 317, 362 N.E.2d 295; People v. Owens (1976), 65 Ill. 2d 83, 357 N.E.2d 465.) However, under the circumstances of the instant case, we find the error to be harmless.

■■■ Where a trial judge commits error by restricting cross-examination of a witness, such error will not warrant reversal unless there remains a reasonable doubt whether defendant has been prejudiced thereby or that the outcome of the trial would have been different had the error not been made. (People v. Scarpelli (1980), 82 Ill. App. 3d 689, 402 N.E.2d 915.) Defendant's aborted cross-examination focused on whether defendant knew, rather than suspected, that the items of Ms. Wallace's property found in his possession were stolen at the time he purchased them. This distinction is pertinent, if at all, only in the event that the jury believed defendant purchased the items instead of removing them himself from the Wallace apartment. The jury's finding of guilty as to the burglary belies the relevancy of either assertion attributed to Officer Kluge. Since the trial court's ruling affected only tangentially defendant's cross-examination of Kluge concerning defendant's version as to his manner of acquisition of the property, which the jury did not believe, the ruling could not have contributed to the conviction. Accordingly, the error complained of is harmless.

Next, it is urged that it was error for the trial court to instruct the jury that it could infer that defendant committed the offense of burglary based upon his possession of recently stolen property. The contested instruction, a form of Illinois Pattern Jury Instruction, Criminal, No. 13.21 (1968), reads as follows:

"If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by committing a burglary."

Defendant asserts that his conviction resulted entirely from the presumption embodied in the instruction. It is defendant's contention that the evidence relating to his possession of the stolen property would not be

sufficient by itself to sustain a conviction beyond a reasonable doubt. Defendant concludes that an inference of guilt based exclusively upon such evidence likewise would not satisfy the reasonable doubt standard, thereby rendering the instruction violative of due process.

Initially, we find fault with defendant's premise that the presumption served as the only basis for a finding of guilt. Apart from defendant's possession of items seized from the Wallace apartment, there is additional circumstantial evidence in the record probative of defendant's guilt. Defendant was present at the scene of the crime within the time frame the burglary occurred, he appeared nervous and displayed suspicious driving habits within minutes of leaving the parking lot at 417 South Graham, he knew the victim personally, he had an opportunity immediately prior to the burglary to view the contents of the apartment, and his explanation that he purchased the items from a friend in the parking lot behind the burglarized premises could be judged by the jury to be incredible in light of the other evidence. Therefore, we cannot accept defendant's speculation that the jury completely disregarded this additional evidence and focused entirely upon the possession and its attendant presumption of guilt.

In *County Court of Ulster County v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213, a permissive presumption in a criminal case is defined as one which enables, but does not require, a trier of fact to infer an ultimate fact, or element of the offense, from proof of a basic fact. The U.S. Supreme Court there stated:

"Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." (442 U.S. 140, 157, 60 L. Ed. 2d 777, 792, 99 S. Ct. 2213, 2224.)

In *County Court v. Allen*, the court further stated that where the presumption is not exclusively relied upon by the trier of fact, there need only be a rational connection between the ultimate fact and the basic fact, such connection being that it is more likely than not that the presumed fact flows from the basic fact. Ultimately, the presumed fact when considered in conjunction with the other evidence at trial must support a finding of guilty beyond a reasonable doubt. The controversy in *County Court v. Allen* concerned a statute which provided, with certain exceptions, that a firearm present in an automobile is presumed to be in the possession of all occupants of the vehicle. The court there held that the statute gave rise to a permissive presumption, which did not shift the

burden of proof to the defendant under the context in which it was applied to the case. The jury was informed as to the elements of the offense, which the State had the burden of proving beyond a reasonable doubt, and that the statutory presumption was only a part of the State's case. Also, the trial court explained to the jury that the presumption could be ignored even in the absence of rebuttal testimony by defendant. In holding the statute constitutional, the court noted that the presumption satisfied the rational connection test and that the record as a whole, and not just the permissive presumption, supported guilt beyond a reasonable doubt.

A similar constitutional challenge to IPI Criminal No. 13.21 was addressed by the court in *People v. Housby* (1981), 84 Ill. 2d 415, in which the court held that under the rationale of *County Court*, the giving of IPI Criminal No. 13.21 is not violative of defendant's due process rights if:

> "(i) there was a rational connection between his [defendant's] recent possession of property stolen in the burglary and his participation in the burglary; (ii) his guilt of burglary is more likely than not to flow from his recent, unexplained and exclusive possession of burglary proceeds; and (iii) there was evidence corroborating [defendant's] guilt." (84 Ill. 2d 415, 424.)

Applying *Housby* to the instant case, we conclude that application of the challenged instruction does not result in a violation of defendant's right to due process. The jury may not infer that defendant committed a burglary based solely on the evidence that he was in the unexplained possession of recently stolen property. The jury is free to decline to infer guilt when confronted with such evidence, regardless of the nature of defendant's rebuttal evidence. Thus, the burden of proof remains with the State. Moreover, other instructions given to the jury define the State's burden of proof and dispel any notion that the challenged instruction was all inclusive with respect to the elements of the offense which the State must prove. The jury was instructed that defendant is presumed innocent until proved guilty and that his failure to testify should not be considered in reaching a verdict. Additionally, the jury was instructed as to the elements constituting a burglary and that the State had the burden of proving each element beyond a reasonable doubt before defendant may be convicted.

■■ The record in the instant case establishes that the presumed fact, the commission of a burglary, is rationally connected to the proved fact, defendant's possession of the recently stolen property. Further, we find that defendant's possession of recently stolen property is more likely than not to have been the result of his commission of the burglary of Ms. Wallace's apartment. Finally, the record as a whole, including circumstantial evidence, sufficiently corroborates any proof of defendant's guilt

which might result from the application of such presumption. (*Cf. People v. Housby.*) We therefore hold that the challenged instruction is not violative of due process, and we affirm defendant's burglary conviction.

Defendant contends that the felony theft conviction should be reduced to misdemeanor theft because the evidence does not establish beyond a reasonable doubt that the value of the stolen property exceeded $150.

■■ In order to obtain a conviction for felony theft the State must prove that the fair cash market value of the property at the time and place of the theft exceeds $150. (*People v. Cobetto* (1977), 66 Ill. 2d 488, 363 N.E.2d 854; *People v. Brown* (1976), 36 Ill. App. 3d 416, 343 N.E.2d 700; *People v. Newton* (1969), 117 Ill. App. 2d 232, 254 N.E.2d 165.) Original or replacement cost is not the standard for assessing value, although evidence of cost together with evidence concerning age, condition, and utility of the stolen item may afford a basis for determining value. (*People v. Brown.*) A consumer who is familiar with the stolen property or property of a similar nature is competent to testify as to the property's value. While it is true that a consumer would have less experience in valuing property than one engaged in the business of buying or selling such property, the inexperience associated with consumer status goes toward the weight of the evidence, not its competency. (*People v. Songer* (1977), 48 Ill. App. 3d 743, 362 N.E.2d 1127.) As with other elements of an offense, the burden of proof beyond a reasonable doubt applies to the valuation of property. *People v. Scott* (1978), 59 Ill. App. 3d 864, 376 N.E.2d 375; *People v. Newton.*

At trial Linda Wallace testified as to the purchase price of the items which were taken from her apartment. She bought the television set for $105 three months prior to the burglary. The stereo was purchased by her for $135 (including a turntable which was not stolen). The clock radio, which was received as a gift three years earlier, was estimated by her to have a cost close to $30.

Brian Lundstrom, an owner of an electronics store with experience in repairing and selling new and used electronic equipment, testified on behalf of defendant. He estimated the fair cash market value of the television set to be between $50 and $65, the value of the stereo to be between $50 and $60, the value of the headphones to be $4, and the value of the clock radio to be $15. According to these calculations, the value of the stolen items is between $119 and $144.

Defendant contends that Linda Wallace's testimony as to the original cost of the items did not rebut Mr. Lundstrom's calculations nor provide the jury with competent evidence as to the fair cash market value of the items. Since Mr. Lundstrom's highest estimate is less than $150, defendant concludes that the State did not prove felony theft.

Mr. Lundstrom's value estimates were based on the following criteria: his observation of a photograph depicting the items, a business rule of thumb that an electronics item loses 50 percent of its value once it is sold, his experience with trade-in merchandise of a similar nature, and the cost estimates provided by Linda Wallace.

Linda Wallace testified that she purchased the stereo equipment "on special." It would be reasonable to conclude that the undiscounted retail price was substantially higher in view of the fact that Mr. Lundstrom characterized this type of stereo equipment as a "leader unit" sold primarily to bring customers into a store in hopes they would later trade up to higher priced items. Mr. Lundstrom did not base any estimates on the normal retail price but upon the "special" price paid by Ms. Wallace. Therefore, by taking into account the undiscounted price of the stereo equipment, the jury may have adjusted upward Mr. Lundstrom's estimate of the stereo equipment. The television set was only three months old when stolen. Mr. Lundstrom did not personally inspect it and was unfamiliar with its condition. The jury properly may have found the television set to be worth more since it was recently purchased. (See *People v. Brown.*) Also, Mr. Lundstrom indicated that he had no experience with ERC clock radios, the brand that was taken from Linda Wallace. Due to Mr. Lundstrom's unfamiliarity with this type of radio, the jury could have rejected his low estimate and adopted a value closer to the cost estimated by Linda Wallace. See *People v. Songer*; *People v. Newton.*

The high value assigned to each estimate provided by Mr. Lundstrom shows that the total value of the items was extremely close to the statutory requirement of being in excess of $150. Therefore, Mr. Lundstrom's failure to personally examine each item, his failure to take into account the fact that the stereo equipment was purchased at a discounted price, and his unfamiliarity with the ERC brand of clock radio are significant in view of the criteria he used in arriving at his estimate. Accordingly, we conclude that the jury's finding that the value of the items exceeded $150 was supported by the evidence beyond a reasonable doubt. Therefore, defendant was properly convicted of felony theft.

For the reasons stated above, we affirm defendant's convictions for burglary and felony theft.

Affirmed.

KARNS and HARRISON, JJ., concur.