THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL V. PHOENIX, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH L. PHOENIX, Defendant-Appellant.

Fourth District   Nos. 16588, 16589 cons.

Opinion filed May 29, 1981.

Daniel D. Yuhas and Janet Sinder, both of State Appellate Defender's Office, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Following a bench trial in the circuit court of Sangamon County, defendants, Carl Phoenix and Joseph Phoenix, were convicted on June 24, 1980, of burglary and felony theft. They received respective sentences of 4 years' and 3 years' imprisonment. Defendants' consolidated appeals challenge their convictions and sentences. For the reasons which follow, we reverse the burglary convictions, affirm the theft convictions, and remand both causes for resentencing.

The State claimed that defendants had burgled a storage shed of Dorothy Eberding on March 27, 1980, and stolen a rototiller from the shed. On appeal, defendants maintain: (1) The evidence failed to prove the defendants' guilt beyond a reasonable doubt; (2) the court erred in denying a motion to suppress the rototiller and evidence concerning it; (3) in sentencing, the court erroneously considered defendants to have received compensation for their offenses; and (4) the sentence of defendant Carl Phoenix was disparate to that of defendant Joseph Phoenix.

As we hold the evidence sufficient to support the theft conviction, we consider first the trial court's ruling on the motion to suppress. Testimony there showed that during the early hours of March 27, 1980, officers of the Springfield police department had defendant Carl Phoenix's 1967 Rambler automobile under surveillance. Officer Thomas Kramp parked his vehicle near Carl's residence, an apartment building at 526 West Monroe, Springfield. At 3 a.m., three male subjects arrived in the Rambler, removed a rototiller from the back seat of the car and placed it on the porch of the apartment building. As Officer Kramp exited his car, the subjects ran upstairs. Kramp also went upstairs and, according to his testimony, was admitted into Carl Phoenix's apartment by Robin Fishburn. Defendant Carl Phoenix, defendant Joseph Phoenix, and another codefendant, Matthew Adams, were present. Kramp informed the defendants that he had observed them remove a tiller from the car. All three defendants denied any knowledge of the tiller, and told Officer Kramp that they had been sleeping. Kramp informed the defendants that he would return if the tiller was reported stolen. The tiller was seized by Officer Kramp because he thought it might be stolen and to prevent someone else from taking the tiller from the porch.

Robin Fishburn testified that she was sleeping at the apartment of Carl Phoenix when she was awakened by a pounding on the door. She unlocked the door, and a police officer pushed the door open, although she did not invite him in. Defendant, Joseph Phoenix, testified that he, Carl Phoenix, and Matthew Adams had purchased the rototiller at about 1:15 a.m. that date from Kenny Pedigo for $10.

The trial court suppressed evidence of any statements made by defendants to the police officer in the apartment, reasoning that *Miranda* warnings were required as a prerequisite to questioning the defendants because attention had focused upon them. The trial court made no finding as to the lawfulness of the officer's entry into the apartment but refused to suppress the rototiller. The State did not appeal the portion of the order suppressing the statements.

■■ Defendants argue the rototiller was illegally seized and evidence concerning it was improperly admitted at their trial. Defendants contend Officer Kramp's entry into the apartment was unlawful and, therefore,

the statements allegedly made by them that they did not own the rototiller and that they had been asleep cannot be used to justify the seizure of the tiller. And, because Officer Kramp did not have probable cause to believe the tiller was the fruit of criminal activity merely because defendants brought it onto the porch at an early morning hour, its seizure was improper.

We do not agree with the premise that we must assume Kramp's entry to have been unlawful. The evidence on that question was conflicting, and the court could have determined it to be lawful. Although the record is silent as to a finding on that question, we deem a determination that the entry was lawful to be implicit in the court's ruling because it is the only way that the ruling can be explained.

Consideration of evidence of defendants' denial of ownership of the rototiller and defendants' claim to have been sleeping immediately after Kramp had seen them placing the rototiller on the porch in the heart of the night supported a determination that Kramp had probable cause to seize the rototiller. It would also support a determination that the property had been abandoned. Such property is not protected by the fourth amendment. (*People v. Huddleston* (1976), 38 Ill. App. 3d 277, 347 N.E.2d 76; *People v. Dorney* (1974), 17 Ill. App. 3d 785, 308 N.E.2d 646.) We find no error in the court's refusal to suppress this evidence.

We next turn to the sufficiency of the evidence to support the convictions. At trial Dorothy Eberding testified that at 4:50 a.m. on March 27, 1980, she noticed the doors to her storage shed had been opened and that her rototiller was missing. She identified a photograph of the tiller seized from the porch of defendant's apartment building as her tiller. Ms. Eberding stated she paid $264 for the tiller one year ago. Officer Kramp repeated his testimony presented at the hearing on the motion to suppress and identified the defendants as the subjects who removed the tiller from the Rambler and placed it on the porch. Kenneth Pedigo testified on behalf of defendants stating that on March 27, 1980, he and a man named Doug took a tiller over to Carl Phoenix and Carl purchased the tiller from Doug for $10.

The proof to support defendants' convictions of both burglary and theft was based mostly upon the inference arising from the evidence of their possession of property recently taken in the burglary of the shed and the attempted explanation for the possession. The recent supreme court decision in *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, is definitive as to the proper use of this inference as to burglary charges. Although ruling upon a jury instruction on the inference, the court held that the inference may be properly applied without infringement upon due process rights if (1) there is a rational connection between a defendant's recent possession of property stolen in the burglary and his

participation in the burglary; (2) a defendant's guilt of burglary is more likely than not to flow from his recent, unexplained and exclusive possession of burglary proceeds; and (3) there is evidence corroborating the defendant's guilt. But, the exclusive and unexplained possession of recently stolen property, standing alone and without corroborating evidence of guilt, does not prove burglary beyond a reasonable doubt.

Here, defendants' possession was explained by the testimony that the tiller had been purchased from another at a ridiculously low price. Furthermore, there was no other evidence corroborating the defendants' guilt of burglary other than the testimony that the rototiller was placed on the porch at a very unusual time of night.

Defendants had been charged with felony theft under section 16—1(a) of the Criminal Code of 1961, which provides: "A person commits theft when he knowingly: (a) Obtains or exerts unauthorized control over property of the owner, * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a).) This section is not limited to the theft of property in which only the actor who initiated the wrongful asportation is guilty of the offense but includes the conduct of those who subsequently purchase the property knowing it to be stolen. (*People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770.) Defendants' attempted explanation for their possession was that they had purchased it, but the stated purchase price was so much under its value as to make it obvious that the implement had been stolen. Thus there was a rational connection between their possession and their guilt of theft. That guilt, either by way of taking the property in the burglary or later buying it knowing it to be stolen, was more likely than not to flow from their possession. The low sales price claimed corroborated the inference arising from the possession.

■■ ■ Under the evidence the court could have concluded beyond a reasonable doubt that the rototiller was obtained either by burglary or by purchase knowing it had been stolen. But, under the *Housby* rule, the reasonable possibility that the property had been taken by others and sold to defendants precluded defendants' guilt of burglary from being inferred. For this reason the burglary convictions are reversed but the felony theft convictions are affirmed.

The theft convictions must be remanded for resentencing at which defendants' receipt of the rototiller cannot be considered as receipt of remuneration for committing the offense and, therefore, an aggravating factor under section 5—5—3.2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2.) Our supreme court has now interpreted this aggravating factor of receiving compensation for committing an offense as applicable only to a defendant who receives remuneration other than the proceeds from the offense itself. *People v. Conover* (1981), 84 Ill. 2d 400.

As new sentences are to be imposed, we need not pass upon the disparity of sentence issue.

Defendants' felony theft convictions are affirmed. Defendants' burglary convictions are reversed. Both causes are remanded for resentencing.

Affirmed in part; reversed in part; remanded with directions.

WEBBER and MILLS, JJ., concur.